McFarland, J.,
delivered tbe opinion of tbe Court.
This was an issue of devisavit vel non in tbe Circuit Court of Cheatham county, to try the validity of the nuncupative will of Elizabeth Bobe, deceased, disposing of personal estate. The verdict was against the will, a new trial refused, and judgment rendered upon the verdict, from which an appeal in error has been prosecuted. The bill of exceptions shows that the supposed will was made on the 24th of March, 1866, when, in the language of the witnesses, the testatrix was in her last sickness; but that she did not die until the 2d of April, some six days afterwards; and that during this period she was sometimes better and sometimes worse, and was able at times to walk about the house, until the day she died! At the time of making the will she was very sick, and remarked that she was liable to die at any time. The proof further shows that the testatrix had ample time to make a written will when the testamentary words were spoken, or between that time and her death.
Upon this, the Circuit Judge instructed the jury, “that if there was ample time and opportunity at the *217 making of the nuncupative will to have the same reduced to writing, and it was not done; or if there was time and opportunity to do so at any time before the death of the testatrix, and yet it was neglected, this' was fatal to the will, and it could not be set up as a nuncupative will; that a verbal will was only good in law when the circumstances under which a testator was placed were such as to make the reduction of it to writing impracticable, in consequence of the expectation of immediate death, and the want of the means, or reasonable facilities at the time, to write the will, or have it done.”
This is very explicit, and was of course decisive of the case; and the question is, was this a correct construction of the statute? At common law, a will of chattels was good without writing: 4 Kent, 576; but the Statute of Frauds of 29 Charles II. changed the common law upon this subject. The same was in substance enacted by our act of 1784, and also in the Code, sec. 2165, in these words: “No nuncupative will shall be good where the estate exceeds two hundred and fifty dollars, unless proved by two disinterested witnesses present at the making thereof, and unless they, or some of them, are especially required to bear witness thereto by the testator himself, and unless it was made in his last sickness, in his own habitation or dwelling-house, or where he had been previously residing -ten days at least, except he be surprised by sickness on a journey, or from home, and die without returning to his house.”
The question is, what is meant by “his last sick *218 ness?” In the ease of Prince v. Hazelton, 20 Johns. R., these words were construed, and Judge Stark, delivering the opinion of the majority of the Court, announced as the result, that a “nuncupative will is not good unless it is made by a testator when he is in extremis, or when he is overtaken by a sudden and violent sickness, and has not time to make a written will.”
There was a dissenting opinion in the case, of much force and plausibility.
Although there have been a number of cases of ■ nuncupative wills before this Court in which the facts raised this identical question, yet we find no discussion of the subject; the judgments however in these cases show that this Court has not followed this construction of the statute.
In the case of Baker v. Dodson, 4 Hum., 342, the will was made on Monday night, and the testator died on the Friday night following. His condition during this period is not- shown. It does not appear but that he had ample time to reduce the will to writing. The will was made the same night the testator was taken sick. The will was established. No question was made but that this will was made in the last sickness of the testator.
In the case of Grim v. Wright, 8 Hum., 639, the will was established without question upon this point. In this case the testator had been sick of diarrhea about five days. He died some hours after making the will, retaining his mind and memory clear to the last. There is nothing to show that the attack in *219 tbis Case was sudden or violent, or that there was anything to have prevented the will from having been reduced to writing. •
In the case of Ridley v. Coleman, 1 Sneed, 617, it appeared that will was made a few days before the death of the testator. The will was held invalid upon other grounds, but there was no question but that it was made in the last sickness. In the case of Hatcher v. Millard, 2 Col., 31, the will was established, although it would seem that there was sufficient time to have made a written will.
In the case of Simpson v. Browning, in the Supreme Court of Georgia, 22 Georgia It., the testator being mortally wounded, made a nuncupative will, and died some twelve hours after. It was in this case distinctly proven that there was ample time, and he had sufficient mind to have dictated, and strength to have made, his written will two hours after he made his nuncupative will. The question was directly made upon this point, and in disposing of it the Court said: “We cannot feel any hesitation in saying that we think it (the proof) showed the words to have been spoken in the time of the last sickness of the speaker. Not to say so would be to give a meaning extremely restricted and quite arbitrary to the expression, ‘in the time of the last sickness,’ contained in the statute.”
The case of Page v. Page was decided by the Court of Appeals of Virginia. The testator was taken sick on the 17th of February. On the 24th he became worse, and made a nuncupative will, although soon after, he told his physician he did not think he would die. The *220 next morning he had improved, and was perfectly in his senses, and was in his senses at intervals every day until he died' on the 4th of March. .Upon this the Court said that it clearly appeared that the will was made in the last sickness of the testator.
Although there is no discussion of the question in any of these cases, yet these courts certainly did not adopt the rule laid down by the Circuit Judge in this cause. This rule would probably have been conclusive against the will in every case we have referred to; for in every case it satisfactorily appeared that there would have been ample time to reduce the will to writing.
We think the construction given to the statute by the Circuit Judge is an arbitrary one. It is important to bear in mind that the power to make a nuncupative will is not derived from this statute. The power existed independently of the statute. The statute only places limitations and restrictions upon that power, and these restrictions will not be held to go any further than the plain and natural import of the language will justify. The only requirement of the statute in this regard is that the will shall be made “in the last sickness” of the testator; but by the construction given to it by the Court below, the sickness must be a sudden and violent one, and must progress so rapidly to a fatal termination as to make it impracticable to make a written will, or it must affimatively appear that the means or facilities for reducing the will to writing were not at hand. Surely, this is adding to the statute requirements not to be *221 gathered from any fair construction of the language used, and such as would practically in most eases defeat wills of this character altogether.
If the words used were of doubtful import, then we might look to the objects to be accomplished by the passage of the law to enable us to determine the meaning; but we do not see that we are authorized to assume that the legislature intended to abolish nun-cupative wills in all cases where it might be possible to make <a written will. If such had been their intention it could certainly have been manifested in plainer language.
We have no hesitation therefore in holding that the charge of the Circuit Judge was in this respect erroneous.
It is not however so easy to determine what explanation of the language should be given to the jury. No construction has been given to it in any case to which we have had access.
There are cases where persons pass so gradually into declining health, and linger so long, that practically it may be very difficult to determine when their last sickness begins. This is probably more a medical than a legal question.
Perhaps in this case it is not proper do more than to say that it must appear that at the time of making the will the testator was sick, and, as the authorities indicate, that he must have acted in contemplation of death from this sickness; that it must further appear that it was his last sickness; that is, this sickness must continue until the testator dies; that the partic- *222 ulár attack of disease, or “ sickness,” must end' ‘ in death.; but no rule is given as to the violence or particular character of the sickness or its duration. Nor will it defeat the will to show that the testator might without difficulty have reduced his will to writing.
Whether at the time of making the will the testator was sick, and whether that sickness was of the character stated, will be questions for the jury upon the evidence, and these facts may be established by any competent evidence.
For the error indicated, the judgment will be reversed and a new trial awarded.